HANOVER INSURANCE COMPANY *vs.* MICHELLE LEEDS
& another.[1]

No. 95-P-295.

Middlesex. Bristol. November 6, 1996. - January 21, 1997.

Present: WARNER, C.J., ARMSTRONG, & JACOBS, JJ.

*Insurance,* Motor vehicle insurance, Insured, Misrepresentation, Coverage.
*Words,* "Material fact."

In a civil action a Superior Court judge correctly granted an insurer's mo-
tion for summary judgment, where the materials submitted on cross mo-
tions established that there were no genuine issues of disputed fact with
respect to the insured's having made a material misrepresentation of fact
to the insurer regarding the principal place of garaging of the insured
vehicle that had increased the insurer's risk of loss. [56-60]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 28, 1993.

The case was heard by *John J. O'Brien,* J., on motions for
summary judgment.

*Carol A. Griffin* for the intervener.

*Stephen M.A. Woodworth (Peter Heppner* with him) for the
plaintiff.

WARNER, C.J. On cross motions for summary judgment, a
Superior Court judge allowed Hanover Insurance Company's
(Hanover) motion and denied G.D.S. Enterprises, Inc., doing
business as Domino's Pizza's (Domino's), cross motion. We
affirm the judgment, preferring to rest our decision on a dif-
ferent ground.

The motions for summary judgment were presented and
opposed on the basis of pleadings, excerpts from deposition
testimony, exhibits, and affidavits. From these materials, we
draw the following undisputed facts. On or about March 1,

---

[1]G.D.S. Enterprises, Inc., doing business as Domino's Pizza, intervener.
Michelle Leeds is not a party to this appeal.

1989, the defendant, Michelle Leeds, was involved in an automobile accident in Lowell in which Winfred Chase suffered personal injuries. At the time of the accident, Michelle was employed by Domino's as a pizza delivery person and was delivering a pizza to a customer at the University of Lowell. Michelle was driving a 1980 Oldsmobile Omega (the Oldsmobile) owned by and registered in the name of her mother, Ellen Leeds, and insured by Hanover. Michelle was the vehicle's principal user.

Prior to 1988, Michelle lived with her mother in Sharon. In January, 1988, she matriculated at a college in Lowell.[2] At that time, she began living with a family in that city. She took the Oldsmobile with her to college, where it remained in her sole possession until the date of the accident.

On October 14, 1988, Ellen Leeds filled out a renewal application for insurance coverage on the Oldsmobile. On the application, she indicated that the vehicle was parked in Sharon "during school or work hours." Hanover was never notified that Michelle had taken the Oldsmobile with her to college in Lowell.

As a result of the March 1, 1989, accident, Winfred Chase initiated a lawsuit against Michelle and Domino's (the Chase litigation). Hanover commenced this action seeking a declaration that it was not obligated to provide optional bodily injury coverage to Michelle with respect to the Chase litigation, arguing that a material misrepresentation had been made regarding the Oldsmobile's principal place of garaging. Hanover also claimed that because Michelle was delivering a pizza at the time of the accident, the vehicle was excluded from coverage under a "carrying for a fee" exclusion contained in the policy. Domino's intervened, claiming that the Hanover policy provided coverage to both Michelle and Domino's.

After a hearing, a Superior Court judge concluded that Michelle's failure to notify Hanover of her move to Lowell did not constitute a material misrepresentation, but nevertheless allowed Hanover's motion based upon the "carrying for a fee" exclusion. Furthermore, the judge ruled that Domino's could not be an "insured" under the Hanover policy.

---

[2]Michelle's affidavit states that she attended the University of Lowell, while she testified at her deposition that she attended Middlesex Community College in Lowell.

On appeal, Domino's argues that it was error to grant summary judgment in favor of Hanover because (1) Domino's was an insured under the Hanover policy; and (2) the "carrying for a fee" exclusion should not apply under the present circumstances. Hanover raises two additional issues. It maintains the judge erred in concluding (1) that no material misrepresentation was made with respect to the Oldsmobile's principal place of garaging; and (2) that Domino's was entitled to additional time in which to file its appeal based upon "excusable neglect."[3]

In reviewing a grant of summary judgment, we must determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Mass.R.Civ.P. 56, 365 Mass. 824 (1974). *Judson* v. *Essex Agric. & Technical Inst.*, 418 Mass. 159, 162 (1994). "Here, where both parties moved for summary judgment, and the evidence taken in the light most favorable to [Domino's] entitled [Hanover] to judgment as matter of law" on the issue of material misrepresentation, Hanover's motion for summary judgment was properly granted, and Domino's motion properly denied. See *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 346 (1996). See also *Conley* v. *Massachusetts Bay Transp. Authy.*, 405 Mass. 168, 173-178 (1989).

The judge ruled that Michelle's failure to notify Hanover of her move to Lowell did not constitute a material misrepresentation upon which Hanover could base its denial of coverage. Hanover argues that the materials submitted in support of its motion for summary judgment require a finding that a material misrepresentation was, indeed, made, and that summary judgment should therefore have been granted on this ground. We agree. In determining whether Hanover was

[3]The hearing on Hanover's motion and Domino's cross motion for summary judgment was held on October 18, 1994. Due to a discrepancy between a hand-written endorsement made on Hanover's motion and a document entitled "Summary Judgment," both dated November 3, 1994, counsel for Domino's incorrectly interpreted the latter document as an order clarifying the relief granted rather than the actual judgment. After determining that judgment had indeed entered on November 3, he filed an emergency motion to enlarge time to file notice of appeal based upon excusable neglect. See Mass.R.A.P. 4(c), 378 Mass. 924, 929 (1979). After a hearing, a Superior Court judge allowed the motion.

entitled to summary judgment on the issue of material mis-representation, we assume, without deciding, that Domino's was an insured under the Hanover policy.

"Statements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued." *Ayers* v. *Massachusetts Blue Cross, Inc.,* 4 Mass. App. Ct. 530, 536 (1976), quoting from *Gabbett* v. *Connecticut Gen. Life Ins. Co.,* 303 Mass. 433, 435 (1939). A misrepresentation in an ap-plication for insurance will enable the insurer to avoid the policy if the misrepresentation was made with actual intent to deceive, or it is material. See G. L. c. 175, § 186[4] ; *Pahigian* v. *Manufacturers' Life Ins. Co.,* 349 Mass. 78, 85 (1965). See also *Ayers* v. *Massachusetts Blue Cross, Inc., supra* at 535. A "material fact" is one which would "naturally influence the judgment of [an] underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium." *Employers' Liab. Assur. Corp.* v. *Vella,* 366 Mass. 651, 655 (1975), quoting from *Daniels* v. *Hudson River Fire Ins. Co.,* 12 Cush. 416, 425 (1853).

Whether a misstatement in an application for insurance increased the risk of loss and was, therefore, "material" is ordinarily a question of fact, *Schiller* v. *Metropolitan Life Ins. Co.,* 295 Mass. 169, 177 (1936), on which the insurer bears the burden of proof. *McDonough* v. *Metropolitan Life Ins. Co.,* 228 Mass. 450, 452 (1917). *Pahigian* v. *Manufacturers' Life Ins. Co.,* 349 Mass. at 85. When, however, the facts are not in dispute, it has been held that certain misrepresenta-tions increase the risk of loss as matter of law. See *ibid.* (misrepresentations as to certain diseases); *Ayers* v. *Mas-sachusetts Blue Cross, Inc.,* 4 Mass. App. Ct. at 535 (misrep-resentation as to symptoms). See also *Radley* v. *Johnson,* 25 Mass. App. Ct. 969, 971 (1988) (question whether an act was done within a reasonable time determined to be one of law).

We first consider whether the application for renewal submitted by Ellen Leeds on or about October 14, 1988,

---

[4]The statute provides: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

contained a misrepresentation with respect to the principal place of garaging the Oldsmobile. In response to the question "In what City or Town, State is [the] vehicle parked during work or school hours?," Ellen Leeds answered: "Sharon."[5] Hanover maintains that this answer constitutes a blatant misrepresentation given the undisputed fact that the Oldsmobile was principally garaged in Lowell when the application was submitted.

In support of its position, Hanover relies on Michelle's August 24, 1993, deposition, at which she testified that she was attending college in Lowell on the date of the accident, that she did not return to Sharon during the summer, but rather "stayed up in Lowell year-round," and that the Oldsmobile was principally garaged in Lowell from the time she began living there until the date of the accident.

In her affidavit, filed almost one year after the deposition, and submitted in opposition to Hanover's motion for summary judgment, Michelle's position had changed. Therein, she stated: (1) that she never changed the principal residence listed on her driver's license from Sharon to Lowell; (2) that she never stopped voting in Sharon; (3) that she never notified the post office of her change of address from Sharon to Lowell; (4) that she continued to visit Sharon on weekends, holidays, and during the summer while attending college in Lowell; and, (5) that she continued to be a "resident" of Sharon at all times while attending college in Lowell. Domino's argues that we must consider both Michelle's affidavit and her deposition testimony in determining whether there exists a genuine issue of material fact with respect to the principal place of garaging the Oldsmobile.

"[A] party cannot create a disputed issue of fact [simply] by . . . contradicting by affidavit statements previously made under oath at a deposition." *O'Brien* v. *Analog Devices, Inc.,* 34 Mass. App. Ct. 905, 906 (1993), citing *Perma Research & Dev. Corp.* v. *Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969).

[5]Directly above the signature line on the application for renewal appears the following disclaimer:

"Notice: If this application contains false information regarding the principal place of garaging, we may refuse to pay claims under any and all of the optional insurance parts of the renewal policy."

See also *Spilios* v. *Cohen*, 38 Mass. App. Ct. 338, 340 n.2 (1995); *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 207 (1995); *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 633-634 n.5 (1996).

While we realize that exceptions to this rule may be appropriate in limited circumstances, see, e.g., *Junkins* v. *Slender Woman, Inc.*, 7 Mass. App. Ct. 878 (1979)(the plaintiff is not bound by those portions of her deposition which may be read as a concession to the defendant's version of the facts); *Geunard* v. *Burke*, 387 Mass. 802, 812 (1982)(deposition and contrary affidavit both considered in passing on motion for summary judgment), we decline to make such an exception here. This is not "a case where the contradicting affidavit can fairly be said to contain [newly discovered] evidence." *Perma Research & Dev. Corp.* v. *Singer Co.*, 410 F.2d at 578. Indeed, Michelle's deposition is likely more reliable than her subsequent affidavit, which was completed nearly a full year later. Moreover, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," the utility of summary judgment would be greatly diminished. *Ibid.*

Even were we to consider Michelle's affidavit, our conclusion would be the same. The affidavit relates more to the issue of Michelle's domicile than to resolution of the question which concerns us here: whether the Oldsmobile was principally garaged in Sharon or in Lowell during the relevant period of time. Michelle's own characterization of her status as a resident of Sharon is not relevant to that inquiry.

Given the undisputed facts regarding the location of the Oldsmobile on October 14, 1988, we hold that a misrepresentation was made on the application for renewal of the Hanover policy. We next consider whether the misrepresentation was material.

In support of its motion for summary judgment, Hanover submitted two affidavits of Ellie Nasitano, an underwriter in its employ. The affidavits were unrebutted by either Michelle or Domino's and therefore established, for purposes of summary judgment, the following facts[6]: (1) one of the factors

---

[6]In her opposition to Hanover's motion, Michelle argued, among other things, that "[e]vidence . . . as to what premium would have been charged

taken into consideration by the Division of Insurance in establishing the premiums for Massachusetts personal automobile insurance policies is a vehicle's principal place of garaging; (2) a vehicle's principal place of garaging is determined by the location of that vehicle for the majority of the year; (3) in calculating the rate of premium, it is customary to charge a higher or lower premium for vehicles garaged away from the insured's primary residential address for more than 182 days out of the year due to attendance at school; (4) if Hanover had been aware that Michelle had taken the Oldsmobile with her to college in Lowell, it would have been considered "principally garaged" in Lowell for purposes of calculating the policy premium; (5) the policy premium for the Oldsmobile, if principally garaged in Lowell as opposed to Sharon, would have increased by $119, and; (6) the reason for the higher premium is that, on an actuarial basis, vehicles garaged in Lowell as opposed to Sharon present a higher risk of loss to the insurer.

Because the uncontroverted evidence submitted by Hanover establishes that the misrepresentation as to the location of the Oldsmobile influenced the calculation of the rate of insurance premium based upon an increased risk of loss to the insurer, we conclude that it was material. Accordingly, we hold that Hanover has met its burden of establishing the absence of a triable issue of fact on the issue of material misrepresentation, and that it was therefore entitled to summary judgment. The judgment of the Superior Court is affirmed.

*So ordered.*

---

based upon this set of facts may not produce the same conclusion as that identified in the affidavit of Ellie Nasitano." This unsubstantiated speculation as to what future evidence might show is insufficient to avoid summary judgment. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991)(once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial"). See also *Radley* v. *Johnson*, 25 Mass. App. Ct. at 971.