Wright, J.
This is a Dist/Mun. Cts. RAD.A, Rule 8C, appeal by defendant Commerce Insurance Company (“Commerce”) of the entry of summary judgment in favor of its insured, plaintiff Ruben Tejada (“Tejada”).
Tejada purchased a standard Massachusetts automobile insurance polity from Commerce in 1998. In August, 2000, Tejada reported to Commerce that his vehicle had been stolen, and filed a theft claim under the optional insurance portion of his policy. After an investigation, Commerce concluded that Tejada had made certain misrepresentations in his insurance applications which affected the policy premium calculated and charged by Commerce. Commerce denied Tejada’s claim on that ground.
On November 15, 2000, Tejada filed a small claims complaint against Commerce for breach of contract[1] The case was transferred to the regular civil docket upon Commerce’s G.L.c. 218, §24 motion. Both Tejada and Commerce thereafter filed Mass. R Civ. R, Rule 56, motions based primarily on the effect of the alleged misrepresentations by Tejada. We recite the facts set forth in the parties’ summary judgment materials which are pertinent to those misrepresentations in the light most favorable to Commerce. Lyons v. Nutt, 436 Mass. 244, 245 (2002).
On January 20, 1998, Tejada met with one Matiza Ramos (“Ramos”), an employee of the Christopher Kokoras Insurance Agency, Inc. (“Kokoras”), to purchase automobile insurance. Kokoras is an independent insurance broker.[2] Because Tejada’s native language is not English, Ramos translated the insurance applications for him, asked him the necessary questions, translated his verbal responses and completed the application form with the information he provided. Tejada then signed both an “Application for Massachusetts Motor Vehicle Insurance” (“Insurance Application”) and an “Out of State Driving Experience Application for Credit” (“Credit Application”). Both applications signed by Tejada stated that he had been licensed to drive in the Dominican Republic, and was first issued a license in Santo Domingo on April 18,1974. Both applications also contained the representation that Tejada had not been in an automobile accident and had not been “found guilty of, or paid a fine for, a moving violation” within the past six years.
Kokoras forwarded the completed applications to Commerce, which issued a standard automobile insurance policy to Tejada Commerce calculated its risk of loss under such policy based on the representations in the applications, and classified Tejada as an experienced driver under the age of sixty-five with a clean driving record for the past six years. That classification resulted in an annual credit toward his annual insurance premium in the amount of $604.00.
Commerce now claims that, during the course of its investigation of Tejada’s theft claim in 2000, it discovered that Tejada had never been issued a driver’s license in the Dominican Republic and had in fact obtained his first driver’s license in Massachusetts on July 19,1996, less than two years before he purchased auto insurance from Commerce. Commerce also claims that it determined from Massachusetts Registry of Motor Vehicles Merit Rating Board records that Tejada had *199 received a citation for speeding on October 23,1996. Both the insurance application and credit application signed by Tejada stated:
If you or someone else on your behalf knowingly gives us false, deceptive, misleading or incomplete information in this application ... and if such false, deceptive, misleading or incomplete information increases our risk of loss, we may refuse to pay claims under any or all of the Optional Insurance Parts and we may cancel your policy.
The same provision is set forth in the standard Massachusetts Automobile Insurance Policy issued to Tejada in section “18. False Information” under “General Provisions and Exclusions.”
In allowing Tejada’s motion for summary judgment and denying Commerce’s motion, the trial court ruled that “[bjecause the inaccurate information provided by plaintiff did not increase the risk of loss from theft, Commerce could not refuse to pay said claim.”[3] We disagree.
1. Section 186 of G.L.c. 175 provides
No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented or made a warrant increased the risk of loss [emphasis supplied].
Pursuant to §186, “[a] misrepresentation in an application for insurance will enable the insurer to avoid the policy if the misrepresentation was made with actual intent to deceive, or it is material.” Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 57 (1997). A misrepresentation is “material” if it would “naturally influence the judgment of an underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium [emphasis supplied].” Employers’ Liab. Assur. Corp. Ltd. v. Vella, 366 Mass. 651, 655 (1975). See also Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 110 (1997). Thus for §186 purposes, “[i]f an insured falsely states a fact that would increase the premium, the misrepresentation is material.” Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128 (1997). Commerce submitted sufficient facts in opposition to Tejada’s summary judgment motion to establish a triable issue as to whether Tejada made misrepresentations in his insurance applications which influenced Commerce’s judgment in fixing the rate of the insurance premium he was charged.
Tejada argued and the trial court ruled that while his alleged misrepresentations as to Ms license and driving record might have affected the risk that he would have an accident and thus the premium charged for Ms liability insurance, the alleged misrepresentations did not increase the risk that his vehicle would be stolen and thus did not affect the premium charged for Ms optional theft coverage under which Ms claim in this case was made. In the context of G.L.c. 175, §186, however, “risk of loss” is not limited to the degree or character of a specific actual *200 loss, but refers to an insurer’s general risk of economic loss or exposure to liability under the insured’s policy as a whole. See Barnstable County Ins. Co. v. Gale, supra at 128-129. The statute does not restrict the insurer’s remedy to a denial of specific portions of coverage, but permits the insurer to void the policy itself for any misrepresentation which affected the calculation of the overall policy premium. This construction of G.L.c. 175, §186 is incorporated into the exclusions of the standard Massachusetts automobile insurance policy, the language of which is prescribed by the Commissioner of Insurance. The policy dictates that the insurer “may refuse to pay claims under any or all of the Optional Parts” of the policy because of false or misleading information provided by the insured “in any application or policy change request” which increases the insurer’s risk of loss. Tejada’s alleged misrepresentations, although unrelated to the risk of a theft of his vehicle, affected Commerce’s risk of loss under the policy itself and resulted in a lower premium to which Tejada was not entitled.
Therefore, contrary to the trial courtfs Rule 56 ruling, G.L.c. 175, §186 is available to Commerce as a potential defense in this action. In opposition to Tejada’s summary judgment motion, Commerce submitted, inter alia, an affidavit of its insurance adjuster, selected portions of a recorded examination under oath of Tejada, and the insurance and credit applications signed by Tejada. These materials were sufficient to satisfy Commerce’s burden of demonstrating a genuine issue of material fact as to its G.L.c. 175, §186 defense based on Tejada’s alleged misrepresentations. Tejada’s Rule 56 motion should thus have been denied.
However, a trial remains necessary, and we affirm the denial of Commerce’s cross-motion for summary judgment Commerce has not shown that it is entitled to judgment in its favor as a matter of law because there is nothing in the record before us which conclusively establishes that the specific representations contained in Tejada’s insurance and credit applications were actually false. While Commerce has, for example, advanced evidence that Tejada was cited for speeding in 1996, Commerce has not proven that he was “found guilty of, or paid a fine for” that or any other moving violation. Similarly, the very limited portion of Tejada’s examination under oath which is included in the record does not contain an unequivocal admission by Tejada that he did not have a driver’s license in 1974. In a somewhat confused exchange conducted through an interpreter, Tejada indicated only that he did not own a car or drive in Santo Domingo, and that he never told the Kokoras insurance agent that he had a driver’s license in Santo Domingo. Additional evidence is required.
Accordingly, the allowance of Tejada’s Rule 56 motion is reversed and the summary judgment entered in his favor against Commerce Insurance Company is vacated.[4] The denial of Commerce’s summary judgment motion is affirmed. The case is returned to the Chelsea Division for further proceedings.
So ordered.

 Tejada’s complaint also sought recovery against Christopher Kokoras Insurance Agency, Inc. for its alleged fraud, deceit and breach of contract in placing false and misleading information in Tejada’s insurance application. Kokoras has not appealed the summary judgment entered against it

 Commerce’s brief states that “Kokoras is a Representation Producer involuntarily assigned to Commerce by the Commonwealth Automobile Reinsurers. See Trust Ins. Co. v. Commissioner of Ins., 48 Mass. App. Ct 628 (2000).”

 In a separate memorandum of decision, the court stated: “Commerce denied the [theft] claim because the misrepresentation of plaintiffs driving record increased their risk of loss and because the premium would have been higher had they known the actual driving record. However, the insurance premium is not a single entity. Rattier, each section has a separate premium, and there is no evidence or reason to believe that the premium for Part 9, Comprehensive, would have been higher had the tacts of plaintiffs driving record been known. The risk of tMs loss was not increased by the misleading information given to Commerce, and they cannot retuse to pay tMs claim”

 Our ruling has no effect on the summary judgment entered in favor of Tejada against defendant Christopher Kokoras Insurance Agency, Inc., which, as previously noted, has not been appealed.